**WO**  BL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clarence Wayne Dixon, | No. CV 05-3894-PHX-SMM (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joe M. Arpaio, et al., | |
| Defendants. | |

Plaintiff filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Maricopa County Sheriff Joe Arpaio and Captain James Baumann, Jail Commander (Doc. #1). Defendants moved for summary judgment and to strike certain exhibits from Plaintiff's statement of facts (Docs. ##44, 54). The Court will **deny** Defendants' Motion to Strike, **grant** Defendants' Motion for Summary Judgment, and **dismiss** Plaintiff's action.

**I. Background**

Plaintiff alleged that his constitutional rights were violated by overcrowded conditions at Maricopa County Towers Jail, which resulted in staph infections, loss of sleep, anxiety, and mental and emotional anguish (Doc. #1). Consequently, Plaintiff sued Defendants Arpaio and Baumann in their official capacities only (Id.; Doc. #52). Defendants moved for summary judgment on the grounds that neither policy nor the effects of the policy amounted to a constitutional violation, there was no deliberate indifference, and Plaintiff's alleged injuries were not caused by a policy instituted or enforced by Defendants (Doc. #44). Plaintiff responded that his constitutional rights were violated due to the overcrowding conditions and as a result, he suffered from several staph infections (Doc. #51).

1   According to the summary judgment evidence, in 1985 Plaintiff was sentenced to
2   seven consecutive life sentences for aggravated assault, kidnaping, sexual assault, and sexual
3   abuse. He was thereafter placed in the custody of the Arizona Department of Corrections
4   (Doc. #45, ex. 1 at 14-15).[1] In January 2003, Plaintiff was transferred to the custody of
5   Maricopa County to await trial on a first degree murder charge (Id.; Doc. #52, ex. 7).
6   Plaintiff was initially placed in the Madison Street Jail where he was housed in a two-man
7   cell (Doc. #45, ex. 1 at 25). In April 2005, Plaintiff was transferred to administrative
8   segregation in the Towers Jail where he was housed with two cellmates (Id. at 25-26).
9   Plaintiff maintained that he should have been placed with only one cellmate, submitting a
10  blank Inmate Request form which indicated that conditions of the Administrative Segregation
11  Housing included "23 hour lockdown with a cellmate" (Doc. #52, ex. 2). The request form
12  was not signed and thus not part of the agreement Plaintiff entered into with Defendant prior
13  to being placed in Administrative Segregation. In fact, when Plaintiff was placed into
14  Administrative Segregation, he signed a "Consent and Understanding" which indicated that
15  he would "not be in a cell by [himself] just because [he] signed into Ad Seg." and which did
16  not guarantee his placement with a single cellmate (Id. ex. 3).

17  Plaintiff's cell contained a toilet and a sink (Doc. #45, ex. 1 at 30). Inmates cleaned
18  their own cells and, on a daily basis or upon request, were provided a mop, a broom, a dust
19  pan, a mop bucket, a toilet brush, and a small bottle of cleaner (Id. at 33, 37, 39; Doc. #52).
20  Additionally, Inmates were at times provided with disinfectant for the floors (Doc. #52).
21  Plaintiff testified that the water in the bucket was often filthy, however he could refill it with
22  clean water from the shower (Doc. #45, ex. 1 at 33). Plaintiff also indicated that he could
23  clean the mop in the shower (Id.). Plaintiff cleaned his cell two to three times a week (Id.;
24  Doc. #52).

---

[1] Plaintiff maintained that he was a pre-trial detainee. However, because Plaintiff was serving seven consecutive life sentences, he was a sentenced inmate housed in Maricopa County Towers Jail awaiting trial on a separate charge. Plaintiff was thus entitled to protection under the Eighth Amendment.

1    Plaintiff asserted that due to the overcrowding and filthy conditions in Towers Jail,
2 he suffered from three staph infections.  In April 2005, Plaintiff had a staph infection in his
3 left ankle and in June 2005 and September 2005, Plaintiff had staph infections in his jaw
4 (Doc. #45, ex. 1 at 29, 34, 41; Doc. #52, ex. 4).[2]  Plaintiff received extensive treatment for
5 his infections, as well as for headaches and other complaints (Doc. #45, ex. 1 at 30; ex. 3).
6 In particular, Plaintiff was given antibiotics and daily wound care (Id.).  Notably, at the time
7 of his deposition, Plaintiff had not suffered from a staph infection for more than one year (Id.
8 ex. 1 at 42).  Plaintiff submitted declarations which he indicated were "unsworn," but that
9 were submitted under the penalty of perjury, from seven fellow inmates indicating that they
10 all suffered from staph infections during their incarceration in Maricopa County (Doc. #52,
11 ex. 8).

## II.  Motion to Strike

13   Defendants moved to strike exhibits 2, 5, 7, and 8 to Plaintiff's Statement of Facts in
14 response to Defendants' Motion for Summary Judgment as irrelevant and inadmissible (Doc.
15 #54).  Defendants argue that the declarations were unsworn and unnotarized and the various
16 documentation unauthenticated (Id.).  Although Plaintiff titled the declarations "unsworn
17 declarations," they were submitted under a declaration of penalty of perjury.  As a result, and
18 because the Court is not bound by a party's characterization, the Court will consider the
19 declarations as sworn statements and will consider them in ruling on Defendants' Motion for

---

[2] Staph infections are endemic to prison facilities and other community settings. See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) (providing that a court may take judicial notice of facts not seriously open to dispute and are established as true without the normal requirement of proof of evidence). In 2000, the Center for Disease Control issued a press release regarding the risk of drug-resistant staph infections in correctional facilities. See www.cdc.gov/od/media/mmwrnews/n011026.htm; see also http://www.cdc.gov/ncidod/dhqp/ar_mrsa_ca_public.html#7 (providing that prisoners are at a greater risk for community-associated staph infections). This action is one of more than one thousand lawsuits filed in this district since September 2004 alleging that the overcrowded conditions in the Maricopa County jail system have resulted in a variety of constitutional violations. In the majority of those actions, inmates complained of contracting staph infections.

- 3 -

1 Summary Judgment.  Further, because Defendants are entitled to summary judgment even
2 considering the exhibits, their motion will be denied.

3 **III.  Legal Standards**

4     **A.  Summary Judgment**

5 A court must grant summary judgment if the pleadings and supporting documents,
6 viewed in the light most favorable to the non-moving party, "show that there is no genuine
7 issue as to any material fact and that the moving party is entitled to judgment as a matter of
8 law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
9 Under summary judgment practice, the moving party bears the initial responsibility of
10 presenting the basis for its motion and identifying those portions of the record, together with
11 affidavits, which it believes demonstrate the absence of a genuine issue of material fact.
12 Celotex Corp., 477 U.S. at 323.  If the moving party meets its initial responsibility the burden
13 then shifts to the opposing party who must demonstrate that the fact in contention is material,
14 i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v.
15 Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the
16 evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.
17 at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The
18 opposing party need not establish a material issue of fact conclusively in its favor; it is
19 sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
20 parties' differing versions of the truth at trial."  First Nat'l Bank of Ariz. v. Cities Serv. Co.,
21 391 U.S. 253, 288-89 (1968).

22 When considering a summary judgment motion, the court examines the pleadings,
23 depositions, answers to interrogatories, and admissions on file, together with the affidavits,
24 if any.  Fed. R. Civ. P. 56 (c).  The affidavits presented by the parties must "set forth such
25 facts as would be admissible in evidence."  Fed. R. Civ. P. 56(e).  And the evidence of the
26 non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor."
27 Anderson, 477 U.S. at 255.

28

### B. Applicable Law

The Eighth Amendment protects inmates from "'unnecessary and wanton infliction of pain,' which includes those sanctions that are 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave for an Eighth Amendment violation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation omitted). These are "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." Rhodes v. Chapman, 452 U.S. 337, 348 (1981). In determining whether a violation has occurred, a court should consider the circumstances, nature, and duration of a deprivation of these necessities. Johnson, 217 F.3d at 731.

Overcrowding is not unconstitutional per se, but it can result in certain effects that form the basis for a constitutional violation. Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th Cir. 1984); Hoptowit, 682 F.2d at 1249. These effects include increased violence, the reduction of other constitutionally required services such that they fall below Eighth Amendment standards, and the deterioration of shelter to the point that it is unfit for human habitation. Hoptowit, 682 F.2d at 1249.

For a person to be liable in his official capacity, that official must have acted as a result of a policy, practice, or custom. See Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2001). To state a § 1983 claim that jail conditions violated his Eighth Amendment rights, a plaintiff must show that the defendant acted with deliberate indifference. Wilson v. Seiter, 501 U.S. 294 (1991). Officials are deliberately indifferent if they both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff has demonstrated that he was housed in a cell with two cellmates and suffered from three staph infections. Plaintiff also established that several other inmates in

- 5 -

1  the facility suffered from staph infections, and prison officials were aware of the infections
2  because the prison medical staff treated the inmates. Defendants demonstrated, however, that
3  they neither instituted nor enforced a policy which resulted in the deliberate indifference to
4  a substantial risk of serious harm.

5      Plaintiff failed to prove that Defendants were deliberately indifferent to the alleged
6  unsanitary condition of his cell. Plaintiff and his cellmates were provided the means to clean
7  the cell, and by his own admission, the cell was cleaned by Plaintiff at least two to three
8  times a week. In addition, when Plaintiff contracted the staph infections, which studies show
9  are endemic to an incarcerated population, he was immediately treated with antibiotics and
10 wound care. Thus, Defendants' administration of proper medical care to Plaintiff
11 demonstrates conclusively that they did not disregard an excessive risk to Plaintiff's health.
12 See Farmer, 511 U.S. at 837. Defendants' Motion for Summary Judgment will therefore be
13 **GRANTED**.

14     Accordingly,

15     **IT IS HEREBY ORDERED** that Defendants' Motion to Strike (Doc. #54) is
16 **DENIED.**

17     **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment
18 (Doc. # 44) is **GRANTED**.

19     **IT IS FURTHER ORDERED** that the Clerk of Court shall dismiss this action and
20 enter judgment accordingly.

21     DATED this 30th day of May, 2007.

_____
Stephen M. McNamee
United States District Judge